Morning, Your Honors. May it please the Court, Cecil Van Devander on behalf of the United States. Prior to the dismissal of the superseding indictment, the procedural history in this unremarkable. The defendant was indicted, filed motions to suppress, one of which was successful. As a result of that successful suppression motion, the government could no longer move forward on its initial charge. It therefore re-evaluated the case based on the evidence it did have that was admissible. On the basis of that evidence, it filed a superseding indictment charging the defendant and his brother with conspiracy to receive child pornography. Now, the ultimate question in this case is whether that sequence of events requires the conclusion that it's more likely than not that the sole purpose of the government's charging decision was to punish the defendant or retaliate against him for filing a suppression motion. Because you concede you didn't rebut a presumption of indictiveness in this case, is that right? No, Your Honor. So we don't go to the next step. I'm sorry? We don't go to the next step if that's more likely or not to establish an indictiveness because you concede you did not rebut it, is that right? No, we don't see that we did not rebut it. Did you rebut it? We believe that we have. Okay, what did you do to rebut it? Let me answer that as directly as I can, although our primary argument is that no... I know that, but I didn't think there was any issue that you didn't even attempt to rebut it. Well, the primary attempt came in the motion for reconsideration. Okay, that's not good, is it? I mean, you can't raise new issues, new arguments in a motion for reconsider, can you? Well, we think in this context, because this court has held that the government has no burden to rebut the presumption until the district court has found that a presumption exists, the district court made a procedural error by finding that there was a presumption and finding that was unrebutted in the same order. So aren't you conceding then that you didn't rebut because you felt that you didn't have to because the defendant had not met, had not come forward and established a presumption? Well, and perhaps I misunderstood your question, Judge Griffin, but I think we would probably concede that at the time that the first order was issued, dismissing the superseding indictment, we had not put objective on the record. Yeah, because you felt like you didn't have a duty to go forward. Correct, correct, sure. So we would say that evidence that was presented in the motion for reconsideration rebuts the presumption, but prior to that, we had no duty. Do you have any authority that you're allowed to do that? Yes, we would point to the Reagan case and others that discuss that it's only once the presumption of indictment applies that the burden shifts to the government. And therefore, you can bring up new arguments, new issues on motion for reconsideration? Well, we don't think it should have had to. No, does it hold that? Because I think it's establishing a new procedural rule for our motions for reconsideration. Well, certainly the motion to reconsider, it doesn't address a motion for reconsideration as a proper avenue to do that, but we would. Okay, so this would be new ground? Well, our position is that the district court is the one that broke new ground by saying there is a presumption and it hasn't been rebutted simultaneously. And in that scenario. You mean this never happened before? Right. Your Honor, this court has never applied a presumption of vindictiveness pre-trial. Andrews is the closest case, but even there, it merely articulated the test and remanded to the district court to apply the test. To my knowledge, there's only one Court of Appeals case that's ever applied the presumption of vindictiveness pre-trial, and that's a D.C. Circuit case. So, but you concede that a motion to suppress could be subject to vindictiveness or not, categorically excluding from the whole category of prosecutorial vindictiveness motions to suppress that would suppress all the evidence and basically dismiss the case. Is that your position? Yes, it is. And it is our position that under Goodwin and Suarez, a routine suppression motion in the pre-trial context does not trigger prosecution. A routine? Is there a difference between a routine and non-routine suppression motion? Well, conceivably, there could be a some sort of suppression motion that combined with various other factors in the case could perhaps trigger a presumption. Again, let's assume that that's the case. What would that be? Well, again, there's only been one Court of Appeals case ever that's ever applied a presumption of vindictiveness in the pre-trial setting. And so it does take quite extraordinary factors. Maybe if there were some sort of allegation of prosecutorial vindictiveness that triggered not only a... No, we're talking about presumption of vindictiveness. Correct. You would say it would have to actually be actual direct evidence of vindictiveness? Well, I should say some sort of prosecutorial misconduct claim that was something really extraordinary that would trigger presumption of vindictiveness. And so a situation where you ended up initially with a mandatory minimum and all of a sudden after a motion to suppress you end up with one that's got a five-year minimum, that wouldn't be an extraordinary enough event to at least raise that presumption? No, Your Honor. And I think this gets to one of the key errors that the District Court made. So the first step in the analysis of the presumption of vindictiveness is whether there's a prosecutorial stake. I'd like to get back to that in a moment, if I may. But the second step is whether the government's conduct was unreasonable. And in reaching the conclusion that it was unreasonable here, the District Court reasoned that because the government brought charges when lesser charges were possible or feasible, that decision was presumptively unreasonable. I think the District Court looked at the fact you had the same evidence at the beginning and 13 months later after the motion to suppress was granted, then you chose to charge the defendant with the five-year mandatory minimum, and nothing had changed in the 13 months other than the fact that the motion was written. Well, I wouldn't say... Is that right? No, I wouldn't say... You didn't get any new evidence in that 13 months, did you? That's correct. There was no new evidence. But as Goodwin and Suarez emphasize, even if there's no new evidence, the government prosecutor's assessment of the case, its perception, its analysis of the evidence, its view of what the appropriate charges are, frequently changed from the moment of indictment. What changed in this case in those 13 months? If the evidence is the same, what were those factors here? Well, the primary factor for why the defendant and his brother were charged with conspiracy to receive was that that was the charge that best fit the crime. I mean, the letters between... Did it fit the crime 13 months earlier when the original indictment was issued? It did. Well, then what changed other than the granting of the motion to suppress? Here, as presented in the affidavit in support of the motion for Well, the explanation was that at the time of the indictment, the government was under the deadline of the speedy truck block. He's been arrested. We need to file an indictment. The most straightforward charge that we can file right now is possession of child pornography on these hard drives. Now, whether a separate conspiracy to receive charge exists, I think if we were allowed to present evidence, as the affidavit attempted, it would show that at the time of the indictment, the government said, well, we're probably going to supersede and add this conspiracy to receive charge, but that's a very unusual charge. Very few cases involving child pornography involve two people discussing how to download child pornography. It's usually one person and an undercover agent. And so let's think through this and make sure that this is the charge we want to bring and this is the proper way to do it. But you had the opportunity to supersede prior to the motion to suppress, didn't you? We could have. You could have done that. We could have. So again, nothing has really changed in that 13-month period except the actions on the motion to suppress. Well, I think that gets to one thing that seems to me kind of anomalous about the district court's conclusion and the defendant's argument here, which is that had the superseding indictment been filed the day that the defendant filed the suppression motion, I think in the defendant's view, that would somehow make it less vindictive because it was much closer in time to the moment of indictment. But I would think that normally that would build the opposite conclusion. That was stronger evidence of vindictiveness. Can you address stake? Yes. Let me get back to prosecutorial stake. Now, as the... That's sort of a preliminary stage, right? Yes. And as the defendant, I think, has conceded, this is the first case ever in which any court has found a prosecutorial stake in a motion to suppress. Now, in reaching that novel conclusion, the district court's reasoning, it was two sentences long, it's on page ID number 814, and the district court said there's a significant prosecutorial stake because the motion to suppress made the government's case, quote, more difficult to prove. Now, if that's the standard, there'll be a prosecutorial stake not only in every single suppression motion, but in numerous other pre-trial motions, all sorts of evidentiary objections, assertions of privilege, challenges to government experts, assertions of speedy trial rights. In fact, I would suggest that with the exception of motions regarding scheduling or funding... All right. Well, that statement's probably overbroad, but here the granting of the motions to suppress not only made it more difficult to prove the initial indictment, it made it impossible to prove it, and therefore basically dismissed the indictment because there's no evidence that can be used. So let's talk about what this case is rather than hypothetical. Well, there are other cases including... Doesn't the prosecutor have a stake when a case is thrown out? No, I think at the pre-trial stage in a motion to suppress, even if it attacks all the motion underlying the original charge, I don't think it triggers a prosecutorial stake. Why not? But if it ends your case, though? It no longer has a case. Well, I guess two points. One is, in this case, the defendant, I think in connection with this argument, has said, well, there's a prosecutorial stake because it could result in a guilty person going free. Generally, that applies only to a previously convicted defendant, but even if it could apply in the pre-trial context, I don't see why it would apply in this case when even the defendant concedes there was other evidence that would support some charge against him, even if there's a dispute over what charge it supports. Are there cases that say that while plea bargaining is going on, adding additional charges because the defendant has not agreed to this or that plea bargain, that that's OK? Yes, Your Honor. Bordenkercher. This isn't exactly that because there's no plea bargaining going on. There's always the potential of plea bargaining going on, isn't there? That's right. Right up to trial, and maybe even after trial, but certainly up to trial. All of this stuff, if it was in the context of plea bargaining, then there would be precedents saying that there's no vindictiveness here. That's right. If I may, I see my time's up. I might just answer that briefly. Two very quick points. One is that this opinion by the district court would send a very clear message to defendants that as soon as an indictment is filed, before you start plea bargaining, file a motion to suppress or some other pre-trial motion because then you haven't started plea bargaining, Bordenkercher is inapplicable, and you're essentially immunized from higher charges absent new evidence. I don't think that's correct. Maybe if your motion is granted, but just filing a motion, how do you come up with that? That's not the facts here. We not only have a motion, we have the granting of the motion and the suppression of the evidence. I would say that usually courts talk about prosecutorial state in response to the defendant's right, the exercise of the procedural right, so it's the filing of the motion that triggers the prosecutorial state. It would encourage them maybe to file, to take that action before it's granted. Granting is the main issue. If that's our holding, it's based on the fact that the motion is granted, then it encourages the prosecutor to file the superseding charges before the motion is granted. It would, it would, which has downsides for the defendant. We've given you some extra time. Thank you, Your Honor. Your Honor, if this may please the Court, I'm Michael Holley. I represent Daniel Ladeau in this appeal. Basically, I think everyone accepts that Andrews, the on-bounds decision of this Court, remains good law, and this is the rare case that satisfies the standards that the Andrews standard is flexible. It says, it asks whether in the particular factual situation presented, there's a realistic likelihood of indication of the prosecutor's augmentation of the charge. The District Court recently found that that was triggered. The government presented a series of explanations trying to show why its decision was reasonable, and each of those reasons crumbled. You say it's a rare case, but in terms of the stake, it's a pretty typical case, isn't it? It just got a motion granted, excluding some evidence, which meant you had to charge a different charge. Your Honor, it's a rare case for many reasons. But it isn't rare with respect to the stake, though, is it? Uh, not so rare. But it is rare to have a suppression motion granted. Oh, it's rare to have a suppression motion granted? Well, it is. The government cites a statistic, one out of six cases, that's much more often in my case. And then, it's also— It's much—you get more than one out of six. No. I thought you said much more often in your case. Oh, no, no. Their statistic is— Oh, reflects more than you've been able to— Okay. But on top of that, I mean, it's followed by— We see bunches of them where they're granted. But it's also followed by new charges being brought, followed by enhanced charges being brought. It's followed by enhanced charges being brought when an equal charge was available. And it's also followed by the government giving invalid explanations for its conduct by saying, well, this was our best case because there were different elements. And, in fact, the elements were the same. Or, this is our best case because this might be looked at as a conspiracy to access. And, in fact, the access part is the same. And so, we ask the court to uphold the district court's application of that. What standard of review do we use when we review a decision to dismiss on the basis of prosecutorial vindictiveness? I think, Your Honor, that the standard, as the Sixth Circuit has said several times, is abusive discretion unless the court—well, if the court, in the process of that review, finds a legal error, then the court addresses that legal part. But, you know, the judge, the district judge, looked at a lot of factors in deciding, well, is something unreasonable? It's kind of a wham. But we would have to find that Judge Nixon abused his discretion in granting the motion. Yes, Your Honor. And you're arguing that he did not. That's correct. And, you know, the government talks as if that affirmation would tie their hands in many ways in other cases. In fact, just looking at this case, the prosecutor's time—you know, we litigated this issue for about a year. We litigated a suppression issue for about a year. We filed the first motion in November, the second one in March, we had a hearing in April, another hearing in May, waited four months for a decision. And so we were litigating this the whole time. And the prosecutor just called up and said, you know, this may not be necessary, because I can bring a receipt charge, or I can bring a conspiracy receipt charge. Then the government would be safe under the Boardman-Kershaw safe harbor. It's also possible—I think it was discussed before—that, you know, maybe the prosecutor didn't even have to call up and trigger the Boardman-Kershaw safe harbor. Maybe the prosecutor could have just filed the superseding indictment before the motion was granted, and it would be a much different case. And even after the motion was granted, perhaps the prosecutor could have called and said, look, we can appeal. This all may not be necessary. We could also bring receipt charges, conspiracy receipt charges. The prosecutor could have tried to invoke Boardman-Kershaw even after. So this decision leaves plenty of opportunities for the prosecutor to bring additional. What he's got to do, though, is tie it into plea negotiation. That is the best route. That is the best. Although I do think— Why should it make a difference? Why is that a logical line to draw? Well, Your Honor, I have— I mean, you like it because it allows you to win this appeal, right? It's what we're given, Your Honor. I don't—well, when I look back at that case law, it looks like what the Supreme Court is saying is, you know, we've approved plea negotiations, and there's bound to be threats in plea negotiations. Bound to be what? In plea negotiations. And it's just bad policy to cut off the negotiations based—by making prosecutors afraid of making threats. So they are allowed to make threats. And there was no threat made in this case. And, you know, what that took away from Mr. Lideau was the chance to say, okay, I give up. I'll go in and plead the possession. I see. You know, the government was satisfied for 13 months with the idea that Mr. Lideau be and go to sentencing with a zero to 10 year. And be in a position to ask questions before times were—whatever. His range may have been very low. I want to calculate it as— So your argument is they could have gone in and said something like, before the ruling came down, they could have said, well, you know, it's possible that we'll re-indict on something worse if you don't withdraw your suppression motion? Is that the idea? Yes, Your Honor. That's what Bordenkircher encourages the government to do. And they didn't do it. And it took away from him the opportunity to satisfy them by getting the conviction they came at. And so I think that's how Bordenkircher makes sense. And that is the line. In the reply brief, the government takes me to task for not distinguishing Suarez. They rely very heavily on that. They say Suarez requires reversal. That case is so different from ours. It's a case where a corrupt police officer was being investigated. First, the government brought corruption—bribery charges. And they threatened to bring stronger charges. They found new evidence. And he merely talked about filing motions. And then the government brought stiffer charges, which he wasn't even convicted. And in that case, the court—the Sixth Circuit does talk some about a motion to suppress and what triggers—the mere filing of it triggers a prosecutorial state. But it's not possible for any holding in Suarez to change. And really, one of the flaws in the government's approach to prosecutorial state issues is that the government treats it as it has to be a category. It has to be, well, every time the defendant files a motion to suppress, it's going to trigger this grand protection against a superseding effect. That's not the way it would work. It doesn't even work that way once the defendant has won the motion. As the Andrews Court said—the Andrews Court addressed that argument, saying the government argues as no systematic interest whatsoever in preventing all defendants from appealing adverse bail defamations. The Sixth Circuit says whether the government has a systematic interest or not is unimportant. What matters is whether the case before it—in the case before it—the court finds a prosecutorial interest in ensuring that exercise of power. And that's what we have here. We have a special circumstance, an unusual series of events. What's the most unusual aspect of it? Well, the most unusual aspects are—it's unusual to win a motion to suppress that makes it impossible for the government to do so. On that charge, though? On that charge? That strikes me as remarkable, isn't it? Don't most suppression motions, when they're successful, undermine that charge? The charge that that gun or whatever—it's possession of a weapon, and you throw the weapon out, you throw the gun out—that doesn't strike me as unusual. Is there anything else unusual? Well, it often makes it—well, first of all, it's winning. The government often wants to— Yeah, but there's cases— It's not about the filing. Okay. But the government often— Winning a suppression motion. It's the mere filing. Okay. Winning, making it impossible. And the government choosing between two equally viable routes, and choosing— Choosing what? The more harsh option. The government had— The government has that choice. They just didn't exercise it before. That's right. For 13 months, they were going to be satisfied—the government was going to be satisfied with the conviction. And then all of a sudden— What were the guidelines for the possession of guns? Your Honor, I believe I calculated them at maybe 30 to 37, 37 to 46. It depends on the number of images. A lot of the images were not— Okay, so we go to the 30s to a minimum of five years? That's— Is that right? That's right, Your Honor. So there's no discretion. He's convicted now of the receipt—it's the five-year minimum. Mandatory minimum. Yes, Your Honor. And, I mean, the guidelines haven't been calculated. There are some questions about how many enhancements would apply. Child pornography guidelines— But it's just—that wouldn't affect the statutory minimum, and that's what the difference is. You're saying that you went from a situation where before, under the initial charge, there was discretion, and you had the guidelines application. And even though the guidelines cannot be calculated, when you go to the new charge, do the calculations, but no matter what the calculations come to, you start with the five-year minimum. That's right, Your Honor. That's the point he's making. And that is the punitive shift for requiring the judge to impose a five-year minimum, regardless of how long it's been in place. But even if this thing hadn't happened, they could have superseded with that at any time? Yes, I'm sorry, Your Honor. If the motion hadn't been made or the motion hadn't been granted, they could have superseded up? I believe so, Your Honor. It would be a much different case, and I think if we had not won the motion, they could have filed the supersedition. Well, they could do it if they weren't passed. But in terms of stake, though, it's different from taking an appeal, where if they hadn't taken the appeal and gotten a remand, they never would have been able to increase the punishment. That's why it's a little less intuitive that this relief should be granted when the stake is a pretrial stake than a post-trial stake. But Anders has certainly said it's a flexible standard of filing. I understand it's a flexible standard. I'm not suggesting there's a categorical rule. It just seems like it ought to be more unusual than a run-of-the-mill case, and I'm still having a little trouble seeing exactly how it's not run-of-the-mill, other than the two possible charges, either of which they could have brought at any time. One has a minimum, and the other one doesn't. I think winning is significant, Your Honor. I mean, part of the reason appeals, the post-appeal context is more intuitively... Prosecutors feel burned when they get a... Because in the appeal context, the defendant is always wrong. Otherwise, it wouldn't be bad. And so I think winning is... Isn't this an unusual case in that after the evidence is thrown out, you'd be charged with not a lesser crime, but a greater crime? I mean, normally in a motion to suppress, once the evidence is thrown out, there may be some other charges there, but they're usually lesser than what was charged to begin with. And here, we've got it turned on its head that we throw these charges out, and then, okay, without this evidence, we still have this greater charge here. And that is really unusual, isn't it? That's certainly true, Your Honor. I mean, I haven't seen this one before. That's certainly true. You would think if evidence is suppressed, they're left with a lesser case. So this is not the run-of-the-mill motion to suppress. Okay. How do you deal with that last point, Mr. Vandiver? About whether it's a run-of-the-mill case and whether it's unusual to have greater charges brought? Well, the point is that it's unusual. I mean, that's what we were asking. If we affirmed, how narrow would our holding be? And I guess he's saying the holding would be very narrow because it's just in the unusual situation where after a motion to suppress is granted, you get charged with a greater crime rather than a lesser crime. Sounds pretty unusual when it's phrased that way. I don't think it is, Your Honor. I think it's common, for example, for the government to charge a defendant, for example, with a 922G felony possession case. And even at the time of charging, it may have other evidence, for example, from a confidential informant that's still on the cover. No other evidence here, though. I'm sorry? No other evidence here. I'm sorry. The confidential informant has other evidence that would support a 924C charge, for example. Let's say you have an informant, and maybe you don't want to reveal his identity. Maybe you recognize that he has extremely lengthy criminal history, and you're not sure you want to rely on his testimony. But you charge a 922G, but you know there's a 924C charge that you could bring. You want to see whether the defendant's going to come in and cooperate or not. And so you hold that back for the time being. The defendant then files a motion to suppress the evidence of that gun, which may be seized for traffic stop. If that's suppressed, the government says, OK, well, the charge that we still have available is the cooperator's testimony about the 924C shooting. So I think it's not unusual for the government to have a greater charge that it holds back and perhaps brings later, either just as it evaluates the case, or if that's the only charge that's liable after a suppression. And really, what I— I don't know that, though, I suppose. If given the opportunity, they could say, at the time of charging, we were thinking— And even if you feel like you didn't get the opportunity here, and if we were to uphold this, you would be on notice that when the motion comes up, you better show your evidence, I suppose. It's true, but I'd like to just point out sort of a problem with that approach. If the government has to respond to the initial motion to dismiss or cross-perform the dictum, and at the same time— Say that again. If the government has to provide both its response, setting forth its legal analysis for why no presumption should apply, and simultaneously come forward with objective, on-the-record evidence to rebut that presumption, I think that creates significant problems, one of which would arise in the scenario I was just describing. So, in theory, in that case, for example, the government could come back with an affidavit saying, well, we had this information from this cooperator. Here are all the reasons why we think we didn't really want to call him. Here are all the things that he could be pouring up on cross-examination. You reveal that right away in the context of responding to a motion to dismiss, and turn that over to the defendant and to the court, and then, regardless of how the motion is resolved, when you then—if you then decide to bring the 924C charge, you then just sort of reveal not only your own personal work product and thinking of the case, but giving kind of a roadmap to how to impeach. See, we do that—we require that all the time. I mean, we've got some McDonnell-Douglas cases where the plaintiff has to establish a provocation case, the defendant has to come forward with evidence, and then the plaintiff has to rebut the defendant's nondiscriminatory reason. We don't allow that to go to a motion for reconsideration. We have the district court decide all those things when the motion is brought, no matter—even when you have a shifting burden of proof. We don't say, oh, and by the way, once you get the prima facie state, we're going to do the rebuttal stage on a motion for reconsideration. We don't do that. That's true. You're asking us to do that for motions to suppress? Well, I do— Prosecutorial vindictiveness motion. May I answer that? Yes, please. We are asking for a different standard than in McDonnell-Douglas, and I think that's warranted because in McDonnell-Douglas, you're talking about two civil litigants, talking about revealing sort of deposition testimony, whereas in the case of prosecutorial vindictiveness, you're asking the government to reveal its own internal discussions about how it exercises prosecutorial discretion. And we think that requires a different outcome, and as Andrew said— Maybe the rules of civil procedure need to be amended right now. They appear to prohibit raising new issues and new arguments on a motion. Well, let me just conclude with— I mean, is that what you're saying? They need to be amended? No, I don't have the authority to amend it. Well, I think what the court could do is make clear to a district court that when the defendant raises a presumption of vindictiveness, the court should determine whether a presumption applies and then give the government an opportunity to rebut. Which wouldn't involve a motion for reconsideration. It would just be a two-step process before the court rules. Certainly, the motion— Did you ask for that here? Is that one of the issues on appeal in your brief? Did we specify that we would like the court to inform us first? No, do you want us to reverse the court because they failed to give you this procedure that you didn't request? Yes, that's one of the— Is that one of the issues in your brief? Yes, Your Honor. And I'd also just— If I may briefly just respond very quickly. Andrew says, whatever rebuttal rights exist in other circumstances, we think the government should have the right to rebuttal here in a prosecutorial case. And did you preserve the issue by objecting below on this basis? Well, again, let me just say this. No, did you or not? I think we preserved the issue by filing the motion for reconsideration. No, did you preserve by objecting? Preserve— I'm sorry, I— This issue by objecting below. And just remember, counsel, you've already said that you didn't because you said you felt that you didn't have a duty. So you can explain that. You can just answer my question. Did you object below? We objected at the first point where it became clear that the government was going to require us to rebut the presumption before finding that a presumption filed. Okay, so you objected at the motion for reconsideration stage? That's correct, sir. Okay, so you did not object prior to the motion for reconsideration? That's correct. All right. But because— Straight answers are always— Thank you, Your Honor. Thank you, counsel. Case to be submitted.